

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-12-2008

# Melchor Jayme v. MCI Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1750

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Melchor Jayme v. MCI Corp" (2008). *2008 Decisions.* Paper 665.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/665

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1750
_____

MELCHOR R. JAYME,
                                        Appellant
                        v.

MCI CORP; GERALD CATZ, President;
MS. BUSCH, Executive Staff

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 07-cv-00055)
District Judge:  Honorable Garrett E. Brown, Jr.

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 7, 2008
Before: RENDELL, JORDAN and VAN ANTWERPEN, Circuit Judges

(Opinion filed: August 12, 2008)
_____

OPINION
_____

PER CURIAM

        Appellant Melchor R. Jayme, a resident of New Jersey, received telephone services

from defendant MCI Corporation ("MCI"), and these services included caller ID with

name and number.  On March 19, 2006, caller ID service ceased to function on Jayme's

telephone, although his actual phone service was not at any time interrupted. Jayme wrote a letter to defendant Gerald Catz, an MCI Executive, and he subsequently received a telephone call from defendant Andrea Busch, an employee of MCI. Busch attempted to identify the source of the problem over the telephone by asking Jayme questions about his caller ID service, including "is the light blinking, is it plugged to an outlet, etc.," which Jayme found difficult to answer. He told her he was "illiterate" in the matter of dealing with appliances and he wanted an MCI technician to come to his home. Busch persisted, and, when Jayme still could not answer her questions, she "banged the phone while [he] was still talking" and he "was humiliated like a slap on the face!" Just over a month later, on May 19, 2006, Jayme's caller ID service resumed, seemingly on its own.

Jayme filed suit pro se in United States District Court for the District of New Jersey, alleging breach of contract and the civil and "criminal" torts of negligent and intentional infliction of emotional distress in connection with the two month loss of his caller ID. He sought money damages as follows: $20,000 in "personal damages," $20,000 in "moral damages," and $100,000 in "punitive/exemplary" damages for breach of contract (Complaint, at ¶ 28), and the same amounts for Busch's alleged infliction of emotional distress, for a total request of $280,000.00, id. The defendants MCI, Catz, and Busch moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Instead of responding to the motion to dismiss, Jayme requested photocopies of the cases relied upon by the defendants in their

2

supporting brief.[1]  The District Court denied this request on several occasions and gave numerous extensions of time for responding to the motion to dismiss.  However, after six months had passed, and no response was forthcoming from Jayme, the District Court proceeded to address the motion on the merits and grant it.  The complaint was dismissed without prejudice for lack of subject matter jurisdiction.  Jayme appeals.

We will affirm.  We have jurisdiction under 28 U.S.C. § 1291.  We review de novo whether the District Court possesses subject matter jurisdiction.  See Metropolitan Life Ins. Co. v. Price, 501 F.3d 271, 275 (3d Cir. 2007).  Congress has provided that jurisdiction in the federal courts be limited.  See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  Federal courts have subject matter jurisdiction in only two circumstances: when a complaint asserts a cause of action under some provision of federal law, see 28 U.S.C. § 1331, or when the parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional minimum of $75,000.00, exclusive of costs and interest, see 28 U.S.C. § 1332.

For purposes of federal question jurisdiction, "[a]n action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition." Lindy v. Lynn, 501 F.2d 1367, 1369 (3d Cir. 1974).  The "fact that a contract is subject to

---

[1] An exhibit in his Appendix on appeal indicates that Jayme received a Bachelor of Laws (LL.B.) degree from Far Eastern University in Manila.

federal regulation does not, in itself, demonstrate that Congress meant all aspects of its performance or nonperformance to be governed by federal law." Id. (quoting Ivy Broadcasting Co. v. American Tel. & Tel. Co., 391 F.2d 486, 490, 493 (2d Cir. 1968)). Jayme's complaint fails to allege a federal cause of action in either contract or tort, and, therefore, is not one arising under the laws of the United States, 28 U.S.C. § 1331. He does not allege that any federal law was violated when his caller ID service allegedly was interrupted. Furthermore, MCI as a "competitive local exchange carrier" is regulated by the New Jersey Board of Public Utilities, and the relationship between customer and carrier is generally governed by state tariffs on file with the Board. Jayme's claim for infliction of emotional distress is similarly a matter of state law, see Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863 (N.J. 1988). Accordingly, the District Court correctly determined that it lacked federal question jurisdiction over Jayme's claims.

Turning to diversity jurisdiction, we note that MCI does not dispute that the parties are diverse. See Appellees' Brief, at 6 n.4. However, MCI contended, and the District Court agreed, that Jayme could not under any circumstances establish the jurisdictional amount of $75,000, exclusive of interest and costs, required for diversity jurisdiction. Our review yields the same conclusion. The amount in controversy rule is that the sum claimed by the plaintiff controls if the claim is made in good faith, but dismissal is justified if it appears to the court to a legal certainty that the claim is really for less than the jurisdictional amount. See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S.

283, 288-89 (1938). It necessarily follows that whether the claims are for less than the jurisdictional amount depends on what damages a plaintiff could conceivably recover under state law. Suber v. Chrysler Corp., 104 F.3d 578, 584 (3d Cir. 1997).

Jayme's claim for emotional distress is not viable in New Jersey as a matter of law. He alleged that he is 86 years old and a heart patient (he suffers from tachycardia). After Busch allegedly spoke sharply to him, he "immediately took the heart medicines and laid down the whole night" and his heart beat "became regular during the night's sleep." He "suffered in agony, frustration and despair every day of the whole sixty one (61) days the 'I.D.' was disconnected." However, under New Jersey law, a claim must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Buckley, 544 A.2d at 365-66 (quoting Restatement(Second) of Torts, § 46). Jayme's infliction of emotional distress claims are insufficient to meet this standard. His associated request for damages in the amount of $140,000 for Busch's civil and "criminal" torts is thus not recoverable. Suber, 104 F.3d at 584.

We turn then to the breach of contract request for money damages, which includes $20,000 in "personal damages," $20,000 in "moral damages," and $100,000 in "punitive/exemplary damages for breach of contract. When punitive damages are recoverable, they are properly considered in determining whether the jurisdictional amount has been satisfied, see Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d

5

Cir. 1993), but when a claim for punitive damages is frivolous, "such damages are unavailable as a matter of law" and "that claim must be stricken from the amount in controversy," id. (citing Gray v. Occidental Life Ins. Co., 387 F.2d 935,936 (3d Cir. 1968)). Jayme requested punitive damages for breach of contract because "all the technicians in all the U.S.A. will be laid off" and "they will lose their income and their families will be displaced," and all MCI customers will become "psychopaths." MCI's termination of the caller ID service will cause MCI's customers' and employees' "happiness" to be aborted, and cause "the flames of liberty" to be smothered. Under New Jersey law, punitive damages for breach of contract generally are not recoverable, see Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1194 (3d Cir. 1993) (construing New Jersey law), and certainly they are not recoverable for the type of harm alleged here. Without the claim for punitive damages of $100,000, all that remains of Jayme's breach of contract claim is his request for $40,000 for "personal" and "moral" damages, which does not exceed the jurisdictional threshold of $75,000.[2]

---

[2] The District Court determined that, under the state tariff provisions, which expressly limit MCI's liability for service interruptions to pro-rata refunds for the time period in which service was interrupted, the most Jayme could recover, given that he paid $39.99 each month for service, was $80.00. Although this was not a finding on the merits, and was simply the court's assessment of the amount in controversy for jurisdictional purposes, insofar as Jayme's complaint was dismissed without prejudice to any remedies that may be available to him under state contract law, we do not reach the question concerning which state laws shall apply in interpreting the terms of the relationship between Jayme and MCI (i.e., contract principles or state tariff provisions). We leave that issue to the state courts. It is sufficient for our purposes that all that remains of Jayme's federal case is a request for damages for a breach of contract that, with a legal certainty, see St. Paul Mercury Indemnity Co., 303 U.S. at 288-89, does not exceed $75,000.

We further conclude that the record clearly establishes that, after jurisdiction was challenged, Jayme had an opportunity to present facts in support of his jurisdictional contention. See Berardi v. Swanson Memorial Lodge No. 48 of Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir.1990). He had more than six months to present evidence in support of his jurisdictional contention and failed to do so, and Federal Rule of Civil Procedure 26 does not require that a party provide its adversary, even a pro se adversary, with copies of the cases cited in its brief.

We will affirm the order of the District Court dismissing the complaint without prejudice for lack of subject matter jurisdiction.